**THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 25-00005-002 |
| Plaintiff, | |
| vs. | **DECISION AND ORDER DENYING THE MOTIONS FOR JUDGMENT OF ACQUITTAL AND NEW TRIAL** |
| EDWARD GLEN DEMAPAN, | |
| Defendant. | |

Defendant Edward Glen Demapan filed the following motions: (1) Motion for Judgment of Acquittal, ECF No. 197; and (2) Motion for New Trial, ECF No. 196. For the reasons stated herein, the motions are **DENIED**.

### I.    Background

On November 19, 2025, the jury found Defendant Edward Glen Demapan guilty of Count 1, Conspiracy to Distribute Methamphetamine Hydrochloride, in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A)(viii); and Count 2, Attempted Possession with Intent to Distribute Methamphetamine Hydrochloride, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(viii) and 18 U.S.C. § 2. *See* ECF No. 193.

On November 25, 2025, Defendant filed the instant motions, seeking a judgment of

acquittal and a new trial. *See* Mots., ECF Nos. 196 and 197. Defendant contends that the evidence presented at trial was insufficient to sustain a conviction for Counts 1 and 2. The Government opposed the motions. *See* Opp'n, ECF No. 205.

## II. Legal Standard

### A. Federal Rule of Criminal Procedure 29

Rule 29 provides that a defendant may move for a judgment of acquittal if the evidence is insufficient to sustain a conviction. The evidence must be viewed in the light most favorable to the government, with all reasonable inferences drawn in the government's favor. *United States v. Niebla-Torres*, 847 F.3d 1049, 1054 (9th Cir. 2017). In doing so, the court must view the evidence as a whole and not in isolation. *United States v. Stanton*, 501 F.3d 1093, 1100 (9th Cir. 2007).

After viewing the evidence in the light most favorable to the government, the question becomes whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's exclusive function is to "determine the credibility of the witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts." *United States v. Nelson*, 419 F.2d 1237, 1241 (9th Cir. 1969). "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." *United States v. Reyes-Alvarado*, 963 F.2d 1184, 1188 (9th Cir. 1992). The question "is not whether the evidence excludes every hypothesis except that of guilt but rather whether the trier of fact could reasonably arrive at its conclusion." *United States v. Nevils,* 598 F.3d 1158, 1165 (9th Cir. 2010) (citation and internal quotation marks omitted). As such, if a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt, the motion must be denied. *Id.* at 1164-65.

### B. Federal Rule of Criminal Procedure 33

Rule 33 provides that the court may vacate any judgment and grant a new trial "if the interest of justice so requires." FED. R. CRIM. P. 33(a). A motion for a new trial is "directed to the discretion of the district judge" and "should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981) (citation and internal quotation marks omitted). "The defendant bears the burden of proving that he is entitled to a new trial under Rule 33, and before ordering a new trial pursuant to Rule 33, a district court must find that there is a real concern that an innocent person may have been convicted." *United States v. Halali*, No. 14-00627-SI-1, 2017 WL 3232566, at *2 (N.D. Cal. July 28, 2017) (quoting *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009)).

## III. DISCUSSION[1]

### A. Motion for Judgment of Acquittal

Defendant argues that there is no evidence connecting Defendant to the conspiracy to distribute methamphetamine: Defendant has been incarcerated and was obviously unable to perform any physical act of the conspiracy, whereas the coconspirators are not incarcerated and had the freedom to do whatever they desired; the coconspirators were the ones who were sending and receiving packages (the money and drug packages); Defendant did not receive the drug package nor the money package; and the only Government witness that connects Defendant to the conspiracy has a questionable past with prior convictions and he has every incentive to lie for his own benefit. *See generally* Mot. at 9-15, ECF No. 197.

The court finds these arguments to be without merit. There was evidence presented at trial that connects Defendant to the conspiracy.

---

[1] Page reference throughout this Order refers to the CM/ECF page numbering system.

1

2

           1. **Count 1: Conspiracy to Distribute Fifty (50) or More Grams of Methamphetamine Hydrochloride**

3

For Defendant to be found guilty, the government must prove each of the following

4

elements beyond a reasonable doubt:

5

       First, beginning on or about August 7, 2024, and ending on or about August 26, 2024, there was an agreement between two or more persons to distribute methamphetamine hydrochloride; and

6

       Second, the defendant joined in the agreement knowing of its purpose and intended to help accomplish that purpose.

7

8

. . .

9

       One becomes a member of a conspiracy by knowingly participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. . . . [A] person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

10

11

12    Jury Instr. No. 10, ECF No. 187. Further, the court provided the following instructions on

13    Conspiracy:

14

       [T]he defendant has, in effect, agreed to participate in the conspiracy if the government proves each of the following beyond a reasonable doubt:

15

16

          First, the defendant directly conspired with one or more conspirators to carry out at least one of the objects of the conspiracy;

17

          Second, the defendant knew or had reason to know that other conspirators were involved with those with whom the defendant directly conspired; and

18

19

          Third, the defendant had reason to believe that whatever benefits the defendant might get from the conspiracy were probably dependent upon the success of the entire venture.

20

21

       It is not a defense that a person's participation in a conspiracy was minor or for a short period of time.

22

23    Jury Instr. No. 12, ECF No. 187.

24

1

2        a.  **First Element:** Beginning on or about August 7, 2024, and ending
3            on or about August 26, 2024, there was an agreement between two
            or more persons to distribute methamphetamine hydrochloride

4    In August 2024, a package containing U.S. Currency was sent from Guam to Houston,

5    Texas. The information contained on the package is as follows: the sender was "See Vivas, 116

6    Luisa St., Tamuning GU 96913", and the recipient was "Katherine Newton, 11414 Clearfield

7    Dr., Houston TX 77044". Def. Ex. 1-4A. On August 14, 2024, the U.S. Postal Inspection Service

8    recovered U.S. Currency in the amount of $80,160.00, in said package. Gov't. Ex. 2-1, 2-2.

9    Special Agent for the Drug Enforcement Administration ("DEA") Samuel Lawver ("Agent

10   Lawver") testified that the package was mailed from Guam to Houston on August 7, 2024. *See*

11   *also* Def. Ex. 1-4A. The recipient's address (11414 Clearfield Dr., Houston) is Liana Cabrera's

12   physical address. Gov't. Ex. 11-1.

13   On August 10, 2024, a package containing drugs was sent from Houston, Texas to Guam.

14   Gov't. Ex. 3-3. The information contained on the package is as follows: the sender was "April

15   Saki, 606 Uvalde Rd., Houston TX 77015", and the recipient was "Seed Vivas, 116 Luisa St.,

16   Tamuning GU 96913". Gov't. Ex. 3-3. The recipient's address (116 Luisa St., Tamuning) is

17   Zerxes Viva's house address. Senior Forensic Chemist for the U.S. Postal Inspection Service

18   Kimberlie Ross testified that she examined the drugs and found that it was d-methamphetamine

19   hydrochloride. The Forensic Laboratory Examination report shows that the d-methamphetamine

20   hydrochloride had 99% (+/- 3%) purity level and weighed 2855.9 (+/- 2.2 grams) grams. Gov't.

21   Ex. 10.

22   At trial, the Government established that there were at least four players in the conspiracy,

23   trying to move money and over 2,800 grams of d-methamphetamine hydrochloride between

24   Guam and Houston, Texas: (1) Zerxes Viva, who received the drug package and delivered it to

Allan Bernal (Viva testified to this information as well as the federal law enforcement officers involved in the controlled delivery); (2) Allan Bernal, who received and opened the drug package (former Task Force Officer for the U.S. Postal Inspection Service Valerie Pereda and Task Force Officer for the Drug Enforcement Administration David Elliott testified to this information); (3) Liana Cabrera, whose stamps.com account can be traced to both the drug and money packages (*see* Gov't. Ex. 11-1, 11-2; Agent Lawyer also testified to this information); and (4) Defendant Demapan, who facilitated the activities between Cabrera, Viva, and Bernal, which will be discussed *supra*.

b. **Second Element:** The defendant joined in the agreement knowing of its purpose and intended to help accomplish that purpose.

Demapan was the link connecting Cabrera to Viva and Bernal in the charged conspiracy. As established at trial, Cabrera's stamps.com account made postage purchases for both the money and drug packages. *See* Gov't. Ex. 11-2. Cabrera had the tracking information, which she shared with Demapan. *See* Gov't. Ex. 12-2, 12-3, 12-9, 12-10. This was also testified to by Agent Lawyer, connecting the phone numbers that Cabrera had been communicating with, with the cellular phones discovered on Demapan's person when his prison cell was searched.[2] Agent Lawyer also testified that he went through Cabrera's iCloud account and reviewed the communications contained therein, and he found that Cabrera did not have any communication with Bernal or Viva. Thus, there was no way of Bernal or Viva knowing of the drug package without another person informing them. Demapan, however, had communications with Bernal and Viva about the package.

Government Exhibit 30-60 shows a photo of a package with a message saying, "It just went out call me when you can." Gov't. Ex. 13-60. The phone numbers associated with this text

---

[2] Law enforcement officers discovered a total of three cellular phones on Demapan's person: two were in his pocket (testimony of Correctional Officer Billy Larson), and one was near his groin area (testimony of DEA Special Agent Dana Walker).

were between Bernal and Demapan. (Testimony of Agent Sawver). The evidence showed that Demapan communicated with Bernal. Demapan then called Viva to tell him about the package delivery to his house. Demapan then instructed Viva to call Bernal. Viva made the call, and Bernal told him where to meet him so that Bernal could get the package from Viva. Viva then delivered the package to Bernal as instructed. Viva testified to all of this at trial.

When Bernal was picked up by law enforcement officers, Demapan called Viva to ask what happened during the delivery. *See* Gov't. Ex. 8-3 and testimony of Viva. Also, in Cabrera's messages, she texted that "[t]hey picked up one of Chelu[3] people and I knew something was wrong[,]" because the drug package sat in the Barrigada post office for four days. Gov't. Ex. 15-4, 15-5. The date of that text was on August 22, 2024, which corresponds to the date of the controlled delivery and when Bernal was detained for questioning. The tracking history of the drug package also corresponds to the fact that it arrived on August 17 at the Barrigada USPS Regional Destination Facility, but it was not delivered until four days later, on August 21. *See* Gov't. Ex. 12-9.

Additionally, when Demapan's prison cell was searched, law enforcement discovered several items inside Demapan's prison cell[4] including a conversion chart, digital scale, baggies, and pipes, all of which are associated with the use and distribution of narcotics. (Testimony of Task Force Officer Adam Grey). Law enforcement officers also found handwritten notes of the addresses of Viva and Cabrera, the same addresses used to send the money and drug packages. *See* Gov't. Ex. 18-66, 19-37, 19-54.

While Demapan may not have performed the physical acts of sending or receiving the packages, he coordinated the activities in Houston, Texas and Guam; and between Cabrera and

---

[3] Agent Lawver testified that Demapan was known by his associates as "Chelu".
[4] Guam Police Department Detective Peter Paulino testified that there was one set of bunk bed in Demapan's prison cell, and Task Force Officer Grey testified that although the prison cell had a double bunk, the top did not have a mattress and was being used as a shelf storage. The prison cell was occupied by Demapan alone.

Viva and Bernal. Demapan was not just a bystander who happens to be associated with Viva, Bernal, and Cabrera; or someone who merely knows the existence of the conspiracy. Rather, Demapan was an active participant of the conspiracy, knowing its purpose and taking a role in helping accomplish that purpose.

### 2. Count 2: Attempted Possession with Intent to Distribute Fifty (50) or More Grams of Methamphetamine Hydrochloride

For Defendant to be found guilty, the government must prove each of the following elements beyond a reasonable doubt:

First, the Defendant intended to possess any controlled substance with the intent to distribute it to another person; and

Second, the defendant did something that was a substantial step toward committing the crime.

A "substantial step" is conduct that strongly corroborates a defendant's intent to commit the crime. To constitute a substantial step, a defendant's act or actions must unequivocally demonstrate that the crime will take place unless interrupted by independent circumstances.

. . .

To "possess with the intent to distribute" means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.

Jury Instr. No. 13, ECF No. 187.

The Defendant may also be found guilty if he aided and abetted in the commission of the offense.

To "aid and abet" means intentionally to help someone else commit a crime.

First, someone else committed Count 2, Attempted Possession with Intent to Distribute Fifty (50) or More Grams of Methamphetamine Hydrochloride;

Second, the defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of Count 2, Attempted Possession with Intent to Distribute Fifty (50) or More Grams of Methamphetamine Hydrochloride;

> Third, the defendant acted with the intent to facilitate Count 2, Attempted Possession with Intent to Distribute Fifty (50) or More Grams of Methamphetamine Hydrochloride; and
>
> Fourth, the defendant acted before the crime was completed.

Jury Instr. No. 15, ECF No. 187.

As discussed above, Demapan was the link between Cabrera in Houston, Texas; and Viva and Bernal in Guam. Demapan took a substantial step and acted with the intent to facilitate the delivery of the drug package by contacting Viva and instructing him to get in touch with Bernal, whom Demapan had also communicated with about the drug package. Demapan was in constant communication with Cabrera as well and obtained the tracking information from her, and he was actively tracking the status of the shipment. Demapan's actions all occurred prior to and during the delivery of the drug package.

### 3. Viva's Testimony and Plea Agreement

Demapan argues that Viva's testimony was the only direct evidence purporting to connect him to the charged conspiracy. Mot. at 8, ECF No. 197. Additionally, Demapan questions Viva's credibility in that Viva has every reason to lie so as to please the Government. *Id.* In return, the Government would seek from the court a sentence reduction for Viva under the U.S. Sentencing Guidelines Section 5K1.1, or 18 U.S.C. § 3553(e), which would remove Viva from the mandatory minimum sentence of 10 years. *Id.* Demapan also raises Viva's prior drug-related convictions and his pretrial release violation, where he only received an admonishment without any real consequence. *Id.*

The jury was well aware of Viva's circumstances—that he will receive benefits and favored treatment from the government if the government decides that he substantially cooperated. *See* Jury Instr. 21, ECF No. 187. The jury was also well aware of the plea agreement.

Gov't. Ex. 20. Defense counsel thoroughly cross examined him about the plea agreement and his past, including his history of prior drug convictions. The court warned the jury that it "should consider the extent to which or whether his testimony may have been influenced" by the benefits and favored treatment he will be receiving from the government and that it "should examine [Viva's testimony] with greater caution than that of other witnesses." *Id.*

Despite being aware of Viva's plea agreement and his criminal history, and the fact that the court warned the jury to examine Viva's testimony with greater caution, the jury nonetheless found him to be a credible witness and further found the Government to have proven its case beyond reasonable doubt. The court will not disturb the jury's findings as it is within the jury's exclusive purview to "determine the credibility of the witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts." *Nelson*, 419 F.2d at 1241.

### B. Motion for New Trial

Defendant's motion for a new trial rehashes the same arguments raised in the motion for judgment of acquittal. *See generally* Mot., ECF No. 196. Defendant's main argument in this instant motion is that the Government's main witness, Viva, was not credible and has a questionable past, including multiple prior drug convictions and that he violated his pretrial release conditions. Mot. at 6-10, ECF No. 196. Additionally, Defendant argues that all evidence points away from him: the stamps.com is owned by Cabrera, the drug package was received by Viva and Bernal, neither the drug package nor the money package was addressed to Defendant, there was no evidence connecting Defendant to the $80,160 money package, and the text messages from Cabrera rather show that she was giving him orders. *Id*. at 4-5.

The court finds Defendant's arguments to be without merit. First, as discussed above, the jury was presented with all the impeachment information on Viva and the court specifically instructed the jury to be particularly cautious in weighing Viva's testimony as a cooperating

1  defendant. Yet, the jury found Viva credible.

2       Second, Viva's testimony was corroborated. The PayTel conversation between Viva and

3  his incarcerated friend, Richard Espedion, which took place a day after the controlled delivery,

4  corroborates Viva's testimony at trial. *See* Gov't. Ex. 8. The WhatsApp messages presented

5  throughout the trial also support Viva's testimony.

6       Third, in a conspiracy, each coconspirator typically plays a different role with all of them

7  working towards the same goal. In this case, as established at trial, Cabrera owned the

8  stamps.com account where the postage for the money and drug packages was purchased. Viva

9  and Bernal's roles were to handle the package that arrived in Guam. Demapan's role, as

10  thoroughly discussed above, was to facilitate the activities between Cabrera in Houston, Texas,

11  and Viva and Bernal in Guam. The government was not required to prove that Demapan took

12  part in all the activities within the conspiracy. The government was also not required to prove

13  that Demapan was the leader (Demapan argues that it was Cabrera giving orders to Demapan).

14  The government was only required to prove that there was an agreement between two or more

15  persons to distribute methamphetamine hydrochloride and that Defendant joined in the

16  agreement knowing of its purpose and intended to help accomplish that purpose. *See* Jury Instr.

17  10, ECF No. 187. The government has proven that.

18       Finally, the government was not required to trace the $80,160 in cash to Demapan. As the

19  government correctly pointed out, Demapan was not charged with money laundering. Opp'n. at

20  19, ECF No. 205. This is also not a forfeiture proceeding where the government is required to

21  establish a lexis between the criminal proceeds and the criminal activity.

22       The court finds that there was sufficient evidence, both direct and circumstantial, for the

23  jury to find Defendant guilty beyond a reasonable doubt. Based on the evidence presented at trial

24  and as discussed above, Defendant has not met his burden that he is entitled to a new trial under

Rule 33. This is not an "exceptional case[ ] in which the evidence preponderates heavily against the verdict," *Pimentel*, 654 F.2d at 545, and that "an innocent person may have been convicted," *Halali*, 2017 WL 3232566, at *2.

### IV.  CONCLUSION

For the reasons stated herein, the court **DENIES** the motion for judgment of acquittal and the motion for new trial.

**SO ORDERED.**



/s/ **Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated:  Feb 27, 2026**